UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:25-cv-24981-LEIBOWITZ

**GERSON ELIAS OCAMPO FERNANDEZ**,

    *Petitioner*,

v.

**GARRETT RIPA**,

    *Respondent.*
_____/

## ORDER

At its core, this case poses a simple question. Which statutory provision applies to the Petitioner: Title 8, United States Code, Section 1225 or Section 1226? Petitioner is an alien from Cuba, and the record shows he has been living in the United States for more than three years, he has been determined to be inadmissible, and he was recently arrested. To many, it might sound crazy to afford rights or privileges regarding bond to such a person. But under federal law, certain aliens retain certain rights and privileges, such as a meaningful opportunity to seek release on bond during the pendency of their removal process. Respondent attempts to dispense with that entitlement through an abrupt policy change, claiming detention is mandatory under Section 1225. But we are a nation of laws, so this Court rejects the attempt because the law that applies here (Section 1226) gives Petitioner an opportunity to be heard at a bond hearing. This Court is not the first to address this question (far from it), and whether the Petitioner ultimately shall be released on bond pending removal is not at issue here. But the Government must afford Petitioner the chance, because Congress said so.

**THIS CAUSE** is before the Court on Petitioner Gerson Elias Ocampo Fernandez's ("Petitioner") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 [ECF No. 1], filed on October 28, 2025. Petitioner filed the Second Amended Petition for Writ of Habeas Corpus (the

"Petition") [ECF No. 7], which the Court considers as the opening brief. [*See* ECF No. 9 at 1 n.1]. The Court ordered expedited briefing and entered an Order to Show Cause. [*See id.* at 2–3]. Respondent Garrett Ripa ("Respondent") filed a response [ECF No. 13], and Petitioner filed his reply [ECF No. 14]. After careful review of the Petition, the parties' briefing, and the relevant legal authorities, the Petition [ECF Nos. 1, 7] is **GRANTED IN PART AND DENIED IN PART**.

## I.  BACKGROUND

### A.  Petitioner's Pre-Detention History

Petitioner is a native and citizen of Cuba who is currently detained at Krome North Processing Center ("Krome") in Miami. [ECF No. 7 ¶ 7]. He entered the United States without inspection on March 11, 2022, where he was apprehended by Customs and Border Protection and subsequently placed in standard removal proceedings pursuant to 8 U.S.C. § 1229(a). [*Id.* ¶ 21; Declaration of Gunnar Pedersen ("Pedersen Decl."), ECF No. 13-2 ¶ 6]. Thereafter, Petitioner was released on his own recognizance pursuant to § 236 of the Immigration and Nationality Act ("INA") and timely applied for asylum. [ECF No. 7. ¶ 21; ECF No. 7-3 at 2; Pedersen Decl., ECF No. 13-2 ¶ 7].

A few months later, on August 30, 2022, the Department of Homeland Security ("DHS") served on Petitioner a Notice to Appear, charging Petitioner with inadmissibility pursuant to Section 212(a)(6)(A)(i) of the INA as an alien present in the United States without being admitted or paroled. [Pedersen Decl., ECF No. 13-2 ¶ 8; ECF No. 13-3 at 1]. On April 28, 2025, an immigration judge sustained the charge of inadmissibility. [Pedersen Decl., ECF No. 13-2 ¶ 9].

### B.  Petitioner's Detention

On September 16, 2025, Immigration and Customs Enforcement ("ICE") arrested Petitioner at an ICE check-in. [ECF No. 7 ¶ 22; Pedersen Decl., ECF No. 13-2 ¶ 10]. Pursuant to Sections 236 and 287 of the INA, ICE detained Petitioner after executing a Warrant for Arrest based upon "biometric confirmation of the [Petitioner]'s identity and a records check for federal databases that

affirmatively indicate, by themselves or in addition to other reliable information, that the [Petitioner] either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." [ECF No. 7 ¶ 22; ECF No. 7-1 at 2]. DHS filed a Form I-830, notifying the immigration court of Petitioner's detention at Krome. [Pedersen Decl., ECF No. 13-2 ¶ 11].

Petitioner then requested a custody redetermination from the immigration judge, who denied the request on October 17, 2025. [*Id.* ¶ 12; ECF No. 7 ¶ 2]. According to the immigration judge, the immigration court lacked jurisdiction under the Board of Immigration Appeals' ("BIA") decision *In re Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). [ECF No. 7 ¶ 26; Pedersen Decl., ECF No. 13-2 ¶ 12; ECF No. 13-5 at 1]. Petitioner did not appeal this custody order. [Pedersen Decl., ECF No. 13-2 ¶ 13; ECF No. 14 at 16].

To date, Petitioner remains under federal custody at Krome pending completion of his removal proceedings and adjudication of his asylum application. [ECF No. 7 ¶¶ 25, 28; Pedersen Decl., ECF No. 13-2 ¶ 15]. Petitioner has no identifiable criminal history and alleges that he has no history of failing to appear for immigration-related proceedings. [*Id.* ¶¶ 23, 25; ECF No. 13-1 at 3].

### C. The Instant Petition

Petitioner moves this Court for a writ of habeas corpus for his unlawful detention at Krome. [ECF No. 1; ECF No. 7 ¶ 3]. He argues that his continued detention violates both the INA and the Due Process Clause of the Fifth Amendment. [ECF No. 7 ¶¶ 50–56]. He requests this Court to order Respondent to provide Petitioner with a bond hearing before an immigration judge or, alternatively, to release Petitioner if a bond hearing is not held within fourteen (14) days of the Court's Order. [*Id.* at 17]. Petitioner also seeks attorneys' fees under the Equal Access to Justice Act, 5 U.S.C. § 504.

Respondent disagrees for several reasons. First, Respondent argues that the Court lacks subject-matter jurisdiction to hear the Petition. [ECF No. 13 at 4–9]. Second, Respondent contends that Petitioner is an "applicant for admission" and is subject to § 1225 of the INA, which mandates

3

detention without eligibility for a bond hearing. [*Id.* at 9–16]. Legislative history purportedly supports Respondent's view. [*Id.* at 16–20]. Finally, Respondent maintains that an "applicant for admission" may only be released from detention if DHS invokes its discretionary parole authority, and § 1226 of the INA does not alter this conclusion. [*Id.* at 21–25].

## II.   LEGAL STANDARD

District courts have the authority to grant writs of habeas corpus. *See* 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The Court's jurisdiction extends to challenges involving immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.   LEGAL ANALYSIS

### A.  The Court Has Subject-Matter Jurisdiction.

Federal courts are courts of limited jurisdiction may only hear cases that they have been authorized to hear by Article III of the Constitution or the Congress of the United States. *See Kokkonen*, 511 U.S. at 377; *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1304 (11th Cir. 2016). "Several sections of the [INA] curtail the jurisdiction of federal district courts in immigration cases." *Merino v. Ripa*, No. 25-23845-CIV, 2025 WL 2941609, at *1 (S.D. Fla. Oct. 15, 2025) (Martinez, J.) (citations omitted); *see also Johnson v. Acting U.S. Att'y Gen.*, 847 F. App'x 801, 801 (11th Cir. 2021) (per curiam) (holding that the INA "deprives the district courts of subject matter jurisdiction over specific types of immigration actions").

This case does not fall within Congress's clear commands that strip district courts of jurisdiction under the INA. Here, Respondent puts forth the following provisions that ostensibly bar this Court's review of the Petition: Sections 1252(a)(5), 1252(b)(9), 1252(e)(3), and 1252(g). [ECF

4

No. 13 at 4–9]. The Court addresses each in turn and concludes that none of these provisions deprive the Court of subject-matter jurisdiction.

    1. <u>Sections 1252(a)(5) and 1252(b)(9)</u>

Respondent analyzes Sections 1252(a)(5) and 1252(b)(9) together, so the Court proceeds as such. Section 1252(a)(5) provides that "the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter" shall be "filed with an appropriate court of appeals . . . ." 8 U.S.C. § 1252(a)(5). Similarly, § 1252(b)(9)—the INA's so-called "zipper clause"—provides the following:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9).

Respondent says that § 1252(a)(5) and (b)(9) "mean that any issue—whether legal or factual—arising from removal-related activity can be reviewed only through the petition-for-review process." [ECF No. 13 at 7 (alteration adopted) (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016))]. Boiled down, Respondent argues that Petitioner should lodge his claims before the Eleventh Circuit because the Petition, whether deemed a "direct" or "indirect" challenge to a removal order, attacks a decision or action to detain, thereby stripping this Court of subject-matter jurisdiction. [*Id.*].

The Government's interpretation is not persuasive and contrary to binding precedent. The cited Sections of the INA strip jurisdiction over review of *removal orders*. *See* 8 U.S.C. §§ 1252(a)(5), (b)(9). No removal order was issued in this case, and, consequently, Petitioner does not seek review of one. Petitioner does not challenge any aspect of his removal proceedings (whether it be initiation or execution); Petitioner challenges *the underlying legality of his detention at Krome*. [*See* ECF No. 14 at 6–

7]. Yet, Respondent believes the "arising from" language found in § 1252(b)(9) covers Petitioner's claims. [*See* ECF No. 13 at 6–7]. But to adopt such a broad reading of the statute would disregard the Supreme Court's clear guidance on this very provision. *See Jennings*, 583 U.S. at 293 ("But this expansive interpretation of § 1252(b)(9) would lead to staggering results. . . . Interpreting 'arising from' in this extreme way would also make claims of prolonged detention effectively unreviewable."). In sum, because Section 1252(a)(5) and the "zipper clause only appl[y] to claims requesting review of a removal order[,]" the Court cannot and does not accept Respondent's view. *See Vasquez Carcamo v. Noem*, No. 25-cv-00922, 2025 WL 3119263, at *2 (M.D. Fla. Nov. 7, 2025); *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1367 (11th Cir. 2006) ("Because we find that [the petitioner] does not challenge 'a final administrative order of removal' or seek review of a removal order, neither section 106(c) nor section 1252(a)(5) apply to this case. . . . [Section] § 1252(b) is equally clear that subsection (b)(9) applies only 'with respect to review of an order of removal'" (alteration adopted) (citations omitted)).

2. <u>Section 1252(e)(3)</u>

Section 1252(e)(3) does not apply to this case either. Section 1252(e)(3) reads:

> Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of (i) whether such section, or any regulation issued to implement such section, is constitutional; or (ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

8 U.S.C. § 1252(e)(3)(A)(i)–(ii). Respondent argues that under Section 1252(e)(3), this Court lacks jurisdiction because Petitioner purportedly challenges DHS's determination that aliens who entered the United States without inspection are subject to mandatory detention under Section 1225(b), regardless of where they were apprehended. [ECF No. 13 at 4–5; *see* ECF No. 7 ¶ 35]. Again, the Court does not agree.

6

On its face, Section 1252(e)(3) limits judicial review of determinations under Section 1225(b), a provision that concerns the *expedited removal* process. *See* 8 U.S.C. § 1252(e)(3); *Castro v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422, 427 (3d Cir. 2016) ("Section 1252(e) also provides jurisdiction to the district court for the District of Columbia to review challenges *to the validity of the expedited removal system.* Such systemic challenges include challenges to the constitutionality of any provision of the expedited removal statute or its implementing regulations, as well as challenges claiming that a given regulation is inconsistent with law." (emphasis added) (cleaned up)). The Court (as it must) begins and ends its analysis there. *See United States v. Noel*, 893 F.3d 1294, 1297 (11th Cir. 2018) ("[W]e give effect to the plain terms of the statute. . . . [I]f the statute's language is clear, there is no need to go beyond the statute's plain language into legislative history." (citations omitted)). Petitioner never was and is not now being subjected to expedited removal. As detailed further below, Section 1225 simply does not apply to this case, so Petitioner is not "seeking judicial review of the 'implementation' of § 1225(b)." *Gonzalez v. Field Off. Dir. of ICE Atlanta Field Off.*, No. 25-CV-6080, 2025 WL 3145764, at *3 (N.D. Ga. Nov. 3, 2025).

Second, it should be noted that Section 1252(e)(3) is titled "Challenges on validity of the system." *See* 8 U.S.C. § 1252(e)(3). Petitioner, however, "does not raise any systemic challenge, nor" does he, for instance, challenge the lawfulness of the July 8, 2025 DHS memorandum instructing ICE officers to detain all noncitizens "who have not been admitted" pursuant to Section 1225(b)(2). *See Bofill v. Field Off. Dir.*, No. 25-cv-25179, 2025 WL 3246868, at *2 (S.D. Fla. Nov. 20, 2025) (Becerra, J.); [ECF No. 7 ¶ 35]. The only thing Petitioner questions is the lawfulness of his detention without the possibility of a meaningful bond hearing. That core challenge withdraws Section 1252(e)(3) from any application here.

    3. <u>Section 1252(g)</u>

As with Respondent's other jurisdictional arguments, the Court disagrees that Section 1252(g) bars review of the Petition. Section 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  Respondent raises a similar argument here as was made vis-à-vis Section 1252(b)(9): that the "arising from" language bars jurisdiction over the Petition because detention "clearly arises from the decision to commence removal proceedings against an alien." [ECF No. 13 at 5 (cleaned up)]. Once more, this argument fails, and the Supreme Court has stated as much.

The Supreme Court has narrowly interpreted Section 1252(g). *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("In fact, what § 1252(g) says is much narrower. The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders." (emphasis removed)). Contrary to the Government's position, this section "does not cover the universe of deportation claims." *Camarena v. Dir., Immigr. & Customs Enf.*, 988 F.3d 1268, 1272 (11th Cir. 2021). The Eleventh Circuit has recognized the Supreme Court's limited application of Section 1252(g) to "three specific actions" only. *Id.* (quoting *Jennings*, 583 U.S. at 294). Indeed, the *Jennings* Court expressly cautioned *against* interpreting "arising from" to mean anything more than these three discrete actions. 583 U.S. at 294.

Given this straightforward guidance, Respondent's argument fails. Petitioner does not challenge any of the "three specific actions" enumerated in Section 1252(g)—he only challenges his detention without a bond hearing, which is a purely legal question that does not question the Attorney General's discretionary authority to engage in the three listed actions of the statute. *See Grigorian v. Bondi*, No. 25-CV-22914, 2025 WL 2604573, at *3 (S.D. Fla. Sept. 9, 2025) (Ruiz, J.) (first citing *Madu*,

470 F.3d at 1368; then citing *Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023); then citing *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004); and then citing *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999)).  *See also Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020); *Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013) *suggestion for reh'g en banc denied*, 737 F.3d 694 (2013), *cert. denied*, 573 U.S. 931 (2014).  Section 1252(g) presents no obstacle here.

Therefore, the Court has subject-matter jurisdiction over the Petition, and accordingly proceeds to exhaustion and the merits of this case.

### B. Exhaustion of Administrative Remedies Is Futile.

The Court briefly considers exhaustion, which does not bar Petitioner's claims either.  As an initial matter, Respondent failed to argue that Petitioner did not exhaust his administrative remedies by not appealing the custody order to the BIA.  [*See generally* ECF No. 13; Pedersen Decl., ECF No. 13-2 ¶ 13].  That argument—based on a "claim-processing rule"—is waived.  *See Kemokai v. U.S. Att'y Gen.*, 83 F.4th 886, 891 (11th Cir. 2023) ("[Section] 1251(d)(1) remains a 'claim-processing rule.'  And such a rule is generally applied where, as here, it *has been asserted by a party*." (emphasis added)); *see also United States v. Harris*, 989 F.3d 908, 911 (11th Cir. 2021) (citing *Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541 (2019) ("[A]n objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point." (citation modified))).

Even assuming Respondent preserved that argument, the exhaustion requirement in this context "is not jurisdictional but rather prudential."  *Perez v. Parra*, No. 25-24820-CV, Order, ECF No. 9 at 2 (S.D. Fla. Oct. 27, 2025) (Williams, J.) (quoting *Kemokai*, 83 F.4th at 891).  The Court ultimately agrees with Petitioner on this score that exhaustion would be futile given the BIA's decision in *Matter of Yajure Hurtado*.  [*See* ECF No. 7 ¶ 20].  The BIA would simply dismiss the appeal for lack of jurisdiction.  Where adequate relief cannot be provided, or the administrative appeal would be futile,

9

courts may excuse administrative exhaustion. *See Puga v. Assistant Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25-24535-CIV, 2025 WL 2938369, at *2 (S.D. Fla. Oct. 15, 2025) (Altonaga, C.J.); *Boz v. United States*, 248 F.3d 1299, 1300 (11th Cir. 2001) ("[A] petitioner need not exhaust their administrative remedies where the administrative remedy will not provide relief commensurate with the claim." (cleaned up)). Therefore, as other courts in this District have done in this same circumstance, the Court finds good cause here to excuse exhaustion. *See Puga*, 2025 WL 2938369, at *2; *Boffill*, 2025 WL 3246868, at *5; *Perez*, No. 25-24820-CV, ECF No. 9 at 3.

### C. Petitioner's Detention Is Unlawful.

Petitioner raises three claims in the Petition: (1) a violation of the INA; and (2 and 3) violations of the Due Process Clause of the Fifth Amendment (procedural and substantive). [ECF No. 7 ¶¶ 50–56]. Petitioner's current detention at Krome without a bond hearing is contrary to Section 1226 of the INA and, therefore, the Petition must be granted. Petitioner's Due Process claims, however, are not yet ripe. Thus, those claims must be dismissed without prejudice.

    1.    <u>Violation of Section 1226</u>

The core dispute between Petitioner and Respondent is whether Section 1225 or 1226 applies. The former subjects Petitioner to mandatory detention without a bond hearing. The latter would require an individualized bond hearing. The Court agrees with Petitioner that Section 1226 is the applicable provision here. Thus, Petitioner is entitled to an individualized bond hearing.

Respondent contends that Petitioner is an "applicant for admission" under § 1225(b)(2)(A) of the INA, which requires mandatory detention without entitlement to a bond hearing. [*See generally* ECF No. 13]. "Section 1225 governs the inspection, detention, and removal of applicants for admission." *Boffill*, 2025 WL 3246868, at *5 (citing 8 U.S.C. § 1225 *et seq.*). It covers those are who noncitizens "present in the United States who have not been admitted." *Puga*, 2025 WL 2938369, at *3 (alteration adopted) (quoting *Gomes v. Hyde*, No. 25-cv-11571, 2025 WL 1869299, at *2 (D. Mass.

July 7, 2025)). The relevant subsection provides that "an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of [the INA]." 8 U.S.C. § 1225(b)(2)(A). An "applicant for admission" is defined as "an alien present in the United States who has not been admitted or who arrived in the United States (whether or not at a designated port of arrival[)] . . . ." 8 U.S.C. § 1225(a)(1). All applicants for admission "shall be inspected by immigration officers." *Id.* § 1225(a)(3). Notably, the language of § 1225(b)(2)(A) is mandatory; a noncitizen may only be released if he is paroled "for urgent humanitarian reasons or significant public benefit under 8 U.S.C. § 1182(d)(5)(A). *Gomes*, 2025 WL 1869299, at *2.

On the other hand, Petitioner contends that he is subject to discretionary detention under Section 1226(a), requiring an individualized bond hearing. [*See generally* ECF Nos. 7, 14]. Section 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings . . . ." *Puga*, 2025 WL 2938369, at *3 (emphasis removed) (quoting *Jennings*, 583 U.S. at 289). Section 1226(a), unlike its mandatory counterpart, establishes a discretionary detention framework for noncitizens arrested and detained "[o]n a warrant issued by the Attorney General[.]" 8 U.S.C. § 1226(a). It authorizes the Attorney General to "continue to detain the arrested alien[,]" release him on a "bond of at least $1,500[,]" or release him on "conditional parole[,]" *id.* § 1226(a)(1)–(2). Noncitizens detained under Section 1226(a) may appeal an initial custody determination by an arresting immigration officer in a bond hearing before an immigration judge. *See Puga*, 2025 WL 2938369, at *3 (citing 8 C.F.R. §§ 1236.1(c)(8), (d)(1)). "Federal regulations provide that aliens detained under [Section] 1226(a) receive bond hearings at the outset of detention." *Id.* (quoting *Jennings*, 583 U.S. at 306 (alteration added) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1))); *see also Lopez Benitez v. Francis*, No. 25-Civ-5937, 2025 WL 2371588, at *13 (S.D.N.Y. Aug. 13, 2025) ("To be sure,

11

a noncitizen detained under § 1226(a) is undoubtedly entitled to a bond hearing before an immigration judge.").

Respondent says that Section 1225 is applicable here because Petitioner was not admitted after inspection by an immigration officer when entering the United States in March 2022; therefore, Petitioner is present without admission and, accordingly, an "applicant for admission" under § 1225. [ECF No. 13 at 10–11].  Petitioner, however, says that Section 1225 covers "inspection-stage applicants for admission" (i.e. at a port of entry) only while Section 1226 governs "post-inspection" noncitizens.  The Court agrees with Petitioner.

For starters, the Court recognizes the ambiguity of the INA's "seeking admission" language in § 1225.  *Puga*, 2025 WL 2938369, at *4 ("But the INA does not define 'seeking admission.'" (emphasis removed); *see generally* 8 U.S.C. §§ 1101, 1225 (lacking definition).  Respondent urges this Court to adopt the BIA's interpretation.  [ECF No. 13 at 13–16].  That is readily rejected as the Court "need not defer to the BIA's interpretation of law simply because the statute is ambiguous.  *Puga*, 2025 WL 2938369, at *5 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024)).  As discussed further below, this case reveals the true merit of *Loper Bright* and underscores that the BIA's faulty interpretation of Section 1225 deserves no deference.

The BIA's and Respondent's interpretation of Section 1225 is dangerously broad.  This view calls for all aliens who have entered the United States without admission "regardless of where or when they arrived in the United States" [ECF No. 13 at 16 (cleaned up)] to be subjected to mandatory detention under Section 1225.  This would capture *all* noncitizens present in the United States who have not yet been admitted.  That cannot be right.

The Supreme Court in *Jennings* unequivocally held that Section 1226 applies "to aliens *already present* in the United States."  583 U.S. at 303 (emphasis added).  Yet, as many courts have held, Section 1225's "seeking" and "arriving" language "implies action — something that is currently occurring, and

12

. . . would most logically occur at the border upon inspection." *Puga*, 2025 WL 2938369, at *4 (first citing *Lopez-Campos v. Raycraft*, No. 25-cv-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025); then citing *Rosado v. Figueroa*, No. 25-cv-02157, 2025 WL 2337099, at *11 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025)); *see also* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/seeking. The repeated use of the present participle underscores the distinction between aliens encountered at a port of entry and those arrested after already being present in the United States. This distinction has long been recognized by the Supreme Court. *See, e.g.*, *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("It is important to note at the outset that our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission, such as petitioner, and those who are within the United States after an entry, irrespective of its legality. In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" (citations omitted)).

Indeed, federal immigration regulations also delineate this clear distinction. For instance: "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). Similarly, Section 1225 contemplates that all aliens "who are applicants for admission . . . shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3). Under the applicable regulations, these officers conduct such inspections *at ports of entry*. *See* 8 C.F.R. § 235.1(a) ("Application to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry . . . ."). This is no mistake.

Respondent also ignores the canon against statutory surplusage. "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (quoting 2A N. Singer, Statutes and Statutory Construction § 46.06 at 181–86 (rev. 6th ed. 2000)). But if the Court were to adopt Respondent's interpretation of Section 1225(b)(2), it would render superfluous Congress's recent amendment to Section 1226(c). *See* Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). This recent amendment mandates detention for noncitizens who meet certain criminal or inadmissibility criteria. *See* 8 U.S.C. § 1226(c)(1)(E)(i)–(ii)). One of these provisions mandates detention for an alien who "is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title." *Id.* § 1226(c)(1)(E)(i) (emphasis added). Paragraph (6)(A), for example, concerns "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General . . . ." *Id.* § 1182(a)(6)(A). If Respondent is right and Section 1225(b)(2) allows for Petitioner's mandatory detention, then the recent amendment to the INA would serve no purpose. *See Puga*, 2025 WL 2938369, at *5 (citing *Lepe v. Andrews*, No. 25-cv-01163, 2025 WL 2716910, at *6 (E.D. Cal. Sept. 23, 2025)); *see also Gonzalez*, 2025 WL 3145764, at *7. The Court rejects this interpretation.

Apart from Respondent's mistaken interpretation of the INA, Respondent cannot credibly argue Petitioner is subject to mandatory detention under Section 1225 on this factual record. Petitioner correctly points out that in both his Warrant for Arrest and Order of Release on Recognizance, Respondent cited to Section 236 of the INA (codified at Section 1226) as the relevant detention authority. [*See* ECF No. 7 ¶ 24 (first citing ECF No. 7-1 at 2; then citing ECF No. 7-3 at 2)]. Moreover, from the very beginning, DHS proceeded under Section 1226. The August 2022 Notice to Appear did not classify Petitioner as "an arriving alien" but rather one "present in the Untied

States who has not been admitted or paroled." [ECF No. 13-3 at 1]. "This classification places him squarely within § 1226." *Perez*, No. 25-24820-CV, ECF No. 9 at 6.

Finally, it bears mentioning that the clear preponderance of authority in this District and nationwide adopts Petitioner's view and rejects Respondent's.[1] Tellingly, Respondent does not cite a *single* district court case supporting his July 2025 policy change and makes no attempt in his brief to distinguish or explain the authority provided by Petitioner. [*See* ECF No. 13 at 20 n.5]. Regardless, the Court joins the powerful and increasing chorus and holds that Petitioner is detained pursuant to Section 1226 and is therefore entitled to a bond hearing. *See, e.g.*, *Bofill*, 2025 WL 3246868, at *7; *Perez*, No. 25-24820-CV, ECF No. 9 at 9; *Puga*, 2025 WL 2938369, at *5; *Merino*, 2025 WL 2941609, at *3; *see also J.G.O. v. Francis*, No. 25-CV-7233, 2025 WL 3040142, at *2–5 (S.D.N.Y. Oct. 28, 2025) (Subramanian, J.) (explaining that Section 1225 applies to Petitioner's detention in substantial discussion of the text and structure of Sections 1225 and 1226).[2]

---

[1] To be sure, not *every* court has rejected the Government's argument. *See, e.g.*, *Vargas Lopez v. Trump*, No. 25CV526, 2025 WL 2780351 (D. Neb. 2025), *Chavez v. Noem*, No. 25-cv-02325, 2025 WL 2730228 (S.D. Cal. 2025); *Sandoval v. Acuna*, No. 25-cv-01467, 2025 WL 3048926 (W.D. La. 2025); *Cabanas v. Bondi*, No. 25-CV-04830, 2025 WL 3171331 (S.D. Tex. Nov. 13, 2025); *Garibay-Robledo v. Noem*, No. 25-CV-177-H, Order, ECF No. 9 (N.D. Tex. Oct. 24, 2025). And of course, there is the BIA itself, *see In re Hurtado*, 29 I.&N. Dec. 216 (BIA 2025). With respect, this Court takes the road more travelled.

[2] For similar rulings nationwide on the core question presented, *see also, e.g.*, *Carcamo*, 2025 WL 3119263, at *5; *Gonzalez*, 2025 WL 3145764, at *8; *Gomes*, 2025 WL 1869299, at *8; *Benitez*, 2025 WL 2371588, at *12–13; *Lopez-Campos*, 2025 WL 2496379, at *8; *Rosado*, 2025 WL 2349133, at 1; *Lepe*, 2025 WL 2716910, at *8; *Castillo v. Lyons*, No. 25-cv-16219, 2025 WL 2940990, at *1 (D.N.J. Oct. 10, 2025) (Farbiarz, J.); *Aguiar v. Moniz*, No. 25-cv-12706, 2025 WL 2987656, at *3 (D. Mass. Oct. 22, 2025); *Avila v. Bondi*, No. 25-3741, 2025 WL 2976539, at *5–7 (D. Minn. Oct. 21, 2025); *Maldonado de Leon v. Baker*, No. 25-3084, 2025 WL 2968042, at *7 (D. Md. Oct. 21, 2025); *Miguel v. Noem*, No. 25-11137, 2025 WL 2976480, at *6 (N.D. Ill. Oct. 21, 2025); *Pineda v. Simon*, No. 25-cv-01616, 2025 WL 2980729, at *2 (E.D. Va. Oct. 21, 2025); *Polo v. Chestnut*, No. 25-cv-01342, 2025 WL 2959346, at *11 (E.D. Cal. Oct. 17, 2025); *Alvarez v. Noem*, No. 25-cv-1090, 2025 WL 2942648, at *4–6 (W.D. Mich. Oct. 17, 2025); *Pacheco Mayen v. Raycraft*, 25-cv-13056, 2025 WL 2978529, at *6–9 (E.D. Mich. Oct. 17, 2025); *Hernandez v. Crawford*, No. 25-cv-01565, 2025 WL 2940702, at *2 (E.D. Va. Oct. 16, 2025); *Piña v. Stamper*, No. 25-cv-00509, 2025 WL 2939298, at *3 (D. Me. Oct. 16, 2025); *Teyim v. Perry*, No. 25-cv-01615, 2025 WL 2950184, at *2–3 (E.D. Va. Oct. 15, 2025); *Singh v. Lyons*, 25-cv-01606, 2025 WL

2. <u>Violation of the Due Process Clause</u>

The Court declines to grant the Petition on the due process grounds because the Court grants the relief Petitioner seeks by sustaining Count III. *See Puga*, 2025 WL 2938369 at *6; *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425 at *8 (E.D. Mich. Sept. 9, 2025). Counts I and II may ripen depending on Respondent's compliance with this Order (providing a bond hearing consistent with Section 1226(a)). "Should Respondent[] fail to comply with this Order by providing Petitioner a bond hearing, Petitioner may renew his due process claim[s]." *Puga*, 2025 WL 2938369, at *6. For now, Counts I and II are to be dismissed without prejudice. *See Babilla v. Allstate Ins. Co.*, No. 20-cv-1434, 2020 WL 6870610, at *1 (M.D. Fla. Aug. 27, 2020) (citations omitted); *see also Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all[.]'" (alteration added) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)).

---

2932635, at *2–3 (E.D. Va. Oct. 14, 2025); *Alejandro v. Olson*, 25-cv-02027, 2025 WL 2896348, at *7–9 (S.D. Ind. Oct. 11, 2025); *Donis v. Chestnut*, No. 25-01228, 2025 WL 287514, at *11 (E.D. Cal. Oct. 9, 2025); *Eliseo A.A. v. Olson*, No. 25-3381, 2025 WL 2886729, at *2–4 (D. Minn. Oct. 8, 2025); *Covarrubias v. Vergara*, No. 25-cv-112, 2025 WL 2950097, at *3 (S.D. Tex. Oct. 8, 2025); *Buenrostro-Mendez v. Bondi*, No. 25-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025); *S.D.B.B. v. Johnson*, No. 25-cv-882, 2025 WL 2845170, at *5 (M.D.N.C. Oct. 7, 2025); *Gonzalez v. Bostock*, 25-cv-01404, 2025 WL 2841574, at *3–4 (W.D. Wash. Oct. 7, 2025); *Artiga v. Genalo*, No. 25-5208, 2025 WL 2829434, at *7 (E.D.N.Y. Oct. 5, 2025); *Cordero Pelico v. Kaiser*, No. 25-cv-07826, 2025 WL 2822876, at *15 (N.D. Cal. Oct. 3, 2025); *Orellana v. Moniz*, 25-cv-12664, 2025 WL 2809996, at *5 (D. Mass. Oct. 3, 2025); *Elias Escobar v. Hyde*, No. 25-cv-12620, 2025 WL 2823324, at *3 (D. Mass. Oct. 3, 2025); *Belsai D.S. v. Bondi*, No. 25-cv-3682, 2025 WL 2802947, at *5–6 (D. Minn. Oct. 1, 2025); *Barrios v. Shepley*, No. 25-cv-00406, 2025 WL 2772579, at *10 (D. Me. Sep. 29, 2025); *Chogllo Chafla v. Scott*, Nos. 25-cv-00437, 25-cv-00438, 25-cv-00439, 2025 WL 2688541, at *6–9 (D. Me. Sep. 22, 2025); *Pablo Sequen v. Kaiser*, No. 25-cv-06487, 2025 WL 2650637, at *6–8 (N.D. Cal. Sep. 16, 2025); *Salcedo Aceros v. Kaiser*, No. 25-cv-06924, 2025 WL 2637503, at *8–12 (N.D. Cal. Sep. 12, 2025); *Lopez Santos v. Noem*, No. 3:25-cv-01193, 2025 WL 2642278, at *3–5 (W.D. La. Sep. 11, 2025); *Jimenez v. FCI Berlin*, No. 25-cv-326, 2025 WL 2639390, at *5–10 (D.N.H. Sep. 8, 2025); *Doe v. Moniz*, 25-cv-12094, 2025 WL 2576819, at *5 (D. Mass. Sep. 5, 2025); *Garcia v. Noem*, No. 25-cv-01180, 2025 WL 2549431, at *5–7 (S.D. Cal. Sep. 3, 2025); *Francisco v. Bondi*, No. 25-cv-03219, 2025 WL 2629839, at *2–4 (D. Minn. Aug. 29, 2025); *Diaz v. Mattivelo*, No. 25-cv-12226, 2025 WL 2457610, at *3 (D. Mass. Aug. 27, 2025); *Kostak v. Trump*, No. 25-1093, 2025 WL 2472136, at *2–3 (W.D. La. Aug. 27, 2025).

IV. **CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED as follows:**

1. The Petition [**ECF Nos. 1, 7**] is **GRANTED IN PART AND DENIED IN PART**. The Petition is granted on Count III.

2. Respondent shall provide Petitioner an individualized bond hearing, consistent with 8 U.S.C. § 1226(a), **within fourteen (14) days of this Order**, or otherwise release Petitioner.[3]

3. Respondent shall file a notice with the Court on or before **December 10, 2025**, confirming and detailing its compliance with this Order.

4. Counts I and II of the Petition [ECF No. 7 ¶¶ 50–54] are **DISMISSED** *without prejudice*.[4]

5. The *Clerk* is directed to **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on November 25, 2025.

_____
DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc: counsel of record

---

[3] Other courts that have granted habeas corpus petitions on this precise issue have given much less time to provide the petitioner a bond hearing. *See, e.g., Perez*, No. 25-24820-CV, ECF No. 9 at 11 (two days); *Gonzalez*, 2025 WL 3145764, at *10 (three days); *Lopez-Campos*, 2025 WL 2496379, at *10 (seven days); *Gomes*, 2025 WL 1869299, at *9 (ten days). However, consistent with Petitioner's request for a bond hearing within fourteen days of this Court's Order [ECF No. 7 at 17], the Court will give Respondent fourteen days to comply.

[4] Petitioner also seeks fees under the Equal Access to Justice Act, 5 U.S.C. § 504. [ECF No. 7 at 17]. The parties may brief this issue as appropriate. *See* 28 U.S.C. § 2412(d)(1)(B) ("A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified.").